UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARTINA MARTIN GARCIA**,<br><br>          Petitioner,<br><br>     v.<br><br>**SERGIO ALBARRAN**, Field Office Director of the San Francisco Immigration and Customs Enforcement Office; **TODD LYONS**, Acting Director of United States Immigration and Customs Enforcement; **KRISTI NOEM**, Secretary of the United States Department of Homeland Security, **PAMELA BONDI**, Attorney General of the United States, acting in their official capacities,<br><br>          Respondents. | Case No. 3:25-cv-10617<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 3 |

Before the Court is Petitioner's Motion for Temporary Restraining Order. ("TRO Mot."), ECF No. 3. On December 11, 2025, Petitioner filed a Petition for Writ of Habeas Corpus, and an Motion for Temporary Restraining Order, against Respondents San Francisco Immigration and Customs Enforcement Field Office Director Sergio Albarran, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pamela Bondi. ECF Nos. 1, 3. Petitioner asks this Court to: (1) order her immediate release from Respondents' custody pending these proceedings and enjoin Respondents from re-detaining her absent further order of this Court, and (2) enjoin Respondents from transferring her out of this District or deporting her during the pendency of the underlying proceedings. *See* Notice of Mot., ECF No. 3. For the following reasons, the TRO is **GRANTED** as modified below.

I.     **BACKGROUND**

According to the record before the Court, Petitioner is an asylum seeker who fled to the United States from Guatemala in April 2024. Pet. for Writ of Habeas Corpus ¶ 1, ECF. No. 1 ¶ 1.

When Petitioner arrived in the United States, she was "released on her own recognizance and was placed in INA section 240 (8 U.S.C. 1229a) removal proceedings." *Id.* ¶ 2. Since then, "she has complied with her supervision conditions, including checking in regularly with ICE's Intensive Supervision Appearance Program ('ISAP')," and "has never missed an in-person ISAP or ICE check-in." *Id*. ¶¶ 3, 28. Petitioner "has no criminal history and no prior entries into the United States." *Id.* ¶ 3. Petitioner "received a removal order on June 24, 2025, and filed an appeal with the Board of Immigration Appeals ('BIA') that same day." *Id*. ¶ 4. Under 8 C.F.R. § 1003.6(a), the appeal stays Petitioner's removal until the BIA renders a final decision in her case. Because Petitioner's appeal is "still awaiting adjudication and has no final set date for a decision," Petitioner is not subject to a final removal order. See *Mayo v. Semaia*, 2025 WL 3496774, at *3 (C.D. Cal. Dec. 5, 2025).

On December 11, 2025, Petitioner was arrested while attending a scheduled Immigrations and Customs Enforcement ("ICE") check-in at 630 Sansome Street in San Francisco. *Id*. Petitioner is currently being detained at 630 Sansome Street in San Francisco, California. *Id*. ¶ 6. Petitioner is "now separated from her one-year-old, United States Citizen baby, her fourteen-year-old son, her ten-year-old daughter, and her five-year-old daughter." Dkt. No. 1 ¶ 37. Moreover, it appears that the basis for the arrest may have been minor, technical violations that could have been the result of the government's own system failing or its failure to communicate properly with Petitioner. Dkt. No. 3-2 ¶¶ 9-12.

On December 11, 2025, this Petition was filed. In the early morning hours of December 12, 2025, counsel filed the motion for the TRO and sent a copy to Respondents' counsel. *Id*. ¶ 15. In the motion, Petitioner contends that her arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents allegedly have no valid interest in detaining her) and procedurally (because she was not provided with a pre-detention bond hearing).

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish [1] a likelihood of

2

success on the merits, [2] the sufferance of irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in their favor, and [4] that an injunction is in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### III.   DISCUSSION

Petitioner has demonstrated a likelihood of success on the merits of her claim that her ongoing detention violates her procedural due process rights under the Fifth Amendment. Petitioner has a substantial interest in remaining out of custody, and the Due Process Clause entitles Petitioner to a bond hearing before an immigration judge prior to any arrest or detention. *Pinchi v. Noem*, --- F. Supp. 3d ----, No. 25-cv-05632-PCP, 2025 WL 2084921, at *2-6 (N.D. Cal. July 24, 2025) (applying the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) to similar circumstances); *see also Pablo Sequen v. Kaiser*, --- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases).

Petitioner has also demonstrated a likelihood of irreparable injury in the absence of temporary relief. The likely unconstitutional deprivation of liberty that Petitioner faces is an immediate and irreparable harm. "It is well established that the deprivation of constitutional rights

3

'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005). "[I]t follows inexorably from [the] conclusion" that Petitioner's detention without a hearing is "likely unconstitutional" that she has "also carried [her] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

The final two *Winter* factors, the balance of the equities and public interest, also weigh heavily in favor of granting temporary relief. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner if it ultimately demonstrates, by clear and convincing evidence, that her detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). Faced with "a conflict between [administrative] concerns and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor." *Hernandez*, 872 F.3d at 996) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

A TRO immediately releasing Petitioner is appropriate to return her to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D.

4

1   Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)).
2   That is the moment prior to Petitioner's likely illegal detention.  *See Kuzmenko v. Phillips*, No. 25-
3   cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining
4   order requiring immediate release of the petitioner back to home confinement from custody, as a
5   restoration of the status quo).

   Because Petitioner satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below.  This Order accords with many other recent grants of temporary relief in similar circumstances.  *See, e.g.*, *Alva v. Kaiser*, No. 25-cv-06676, 2025 WL 2294917, at *3 (N.D. Cal. Aug. 7, 2025) (granting temporary restraining order); *Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia v. Bondi*, No. 25-cv-5070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years ); *Enamorado v. Kaiser*, No. 25-cv-4072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

   Finally, the Court exercises its discretion under Rule 65(c) to dispense with the filing of bond.  "[T]here is no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).  Therefore, no security is needed to ensure that Respondents will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

## IV.   ORDER

   For the foregoing reasons, it is hereby **ORDERED** that Petitioner's Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioner from Respondents'

1  custody pending full briefing and hearing on the underlying petition and/or a preliminary
2  injunction regarding re-detention.[1]

3  Respondents shall file a status report **by 10:00 a.m. on December 13** confirming release
4  and shall not re-detain pending resolution of the forthcoming hearing.

5  Respondents are **ORDERED TO SHOW CAUSE** why the petition should not be granted and/or
6  a preliminary injunction should not issue regarding re-detention of Petitioner without notice and a
7  pre-deprivation hearing before a neutral decisionmaker and from removing Petitioner from the
8  United States.

9  Respondents shall file a response to Petitioner's motion by no later than **12:00 noon on**
10 **December 18, 2025**.  Any reply shall be filed by close of business on **December 22, 2025**. A
11 hearing shall be heard at 10:00 a.m. by Zoom on **December 26, 2025.  This order shall remain**
12 **in effect until that time.**  Parties are advised that the assigned judge may change the briefing
13 schedule and the hearing date.

14 The Court issues this order on **December 12, 2025 at  5:37 a.m**. and, given the hour, sends
15 a courtesy copy by email to Pamela Johann, Civil Chief of the San Francisco office of the U.S.
16 Attorney for the Northern District of California at Pamela.Johann@usdoj.gov and to Petitioner's
17 counsel, Alyosha Maggin, amaggin@centrolegal.org.

18 **IT IS SO ORDERED.**

19 Dated:

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[1] Petitioner also asks the Court to order that she remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."  *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

6